FRANKFORD REAL-ESTATE, TRUST & SAFE-DEPOSIT CO. v. JACKSON COUNTY.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1900.)

No. 600.

MUNICIPAL CORPORATIONS—POWER OF ILLINOIS COUNTIES TO ISSUE INTEREST-BEARING WARRANTS.

The Illinois statute of May 31, 1879 (Hurd's Rev. St. c. 146a, §§ 1, 2), providing that warrants "payable on demand" shall be issued upon the treasurer of the state or any county or municipality only when there shall be sufficient money in the appropriate fund to pay the same, except that, when there shall be no money to meet the ordinary and necessary expenses, warrants may be authorized and issued in anticipation of taxes levied, does not affect the power of a county, existing under prior statutes, and recognized by the decision of the supreme court of the state, to issue interest-bearing orders, payable at specified times in the future, in payment of contractors for the building of a jail; nor are such orders rendered invalid because they are negotiated by the county, and the proceeds used to pay the contractors.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

This is an action of assumpsit on six warrants drawn by the clerk upon the treasurer of Jackson county, Ill., each for five hundred dollars, upon interest

coupons attached thereto, and upon coupons cut from other warrants of the same tenor and origin. The warrants bear date February 1, 1895, are made payable two and three years after date, and otherwise are alike. The board of supervisors of Jackson county, at their July term, 1894, adopted a resolution instructing the building committee to proceed to contract for the building of the jail as per plans and specifications adopted, and directing further that "the committee, in advertising for bids in this work, will designate the manner in which the same shall be paid for, namely, in interest-bearing county orders, said orders to draw interest at the rate of 5 per cent. per annum from date, interest payable annually,"—naming here times of payment for specified sums, commencing at five and ending with ten years after date, and concluding: "The clerk is hereby authorized to draw these interest-bearing orders as the work progresses, and in accordance with the contract as made by the said committee." Later, at the same term, the committee's report of bids received and those accepted was approved, and on motion "the superintendent was empowered to purchase all lumber, paints, iron, etc., as needed for the building." At the ensuing September term the committee reported the work progressing satisfactorily, but "the contractors finding some difficulty in realizing on their orders." At a called term, on January 23, 1895, correspondence with Eastern capitalists was reported, and resolutions offered and adopted to the effect that for the payment of the orders issued and to be issued the sum of $2,500 be set apart each year from the levy of seventy-five cents on the one hundred dollars valuation, levied for county expenses; that said orders be made payable $1,500 each year for two years from date, $2,000 each year thereafter to and including the ninth year from date, "or so much as may be needed to complete the jail"; that the orders shall bear five per cent. annual interest, payable semiannually; that anything to the contrary in the resolutions of July 12th and September 14th is repealed so far as it relates to said orders, and that the form of the orders and coupons be as follows:

"$———.                    Jackson County, Illinois.              No. ———.
                "Treasurer of said County.
                                                    "————, 189-.

"On or before ——— years from date pay to ———, or bearer, the sum of five hundred dollars, with interest at the rate of five per cent. (5%) per annum, payable semiannually (as per coupon attached), out of funds collected under the levy for county expenses of seventy-five (75) cents on one hundred dollars ($100) valuation in accordance with the resolutions of the board of supervisors adopted Jan. 23d, 1895. This order is issued in part payment for building county jail.
        "By Order of County Board.
        "Countersigned by
            "————, Treasurer.
                                            "————, Clerk.

"No. ———.                                              $———.
                                        "Date ————, 18—.

"The treasurer of Jackson county, Illinois, will pay the bearer twelve and 50/100 dollars, being six months' interest on county order of above number, due on above date.                    ————, Clerk.
        "Attest:
            "————, Treasurer."

And thereupon the record proceeds: "On motion Mr. Hartman, the clerk be, and is hereby, authorized to issue thirteen thousand dollars ($13,000) in jail orders, as stated in the resolutions just adopted, with semiannual interest coupons at five per cent. (5%) interest, the same being in five hundred dollar ($500) orders. Four thousand dollars ($4,000) of said orders, which is held by the First National Bank of Murphysboro, Ill., to be exchanged by the clerk, if said bank so desire. The remaining nine thousand dollars ($9,000) to be sold to Edward C. Jones & Co., of New York, at ninety-four (94) cents on the dollar, and, if the said Edward C. Jones & Co. decline to take them, to then sell to any party or parties who desire to purchase them at that rate (ninety-

four [94] cents on the dollar) or better." On the ensuing March 4th the committee reported as follows: "That in pursuance of an order of this board made January 23, A. D. 1895, relating to the issuance of county orders in the sum of ($9,000) nine thousand dollars, and which was ordered to be sold at 94 cents on the dollar to Edward C. Jones and Company, of New York, we herewith submit that, after a very elaborate amount of correspondence between Edward C. Jones and Company and your committee, we finally succeeded in securing an order that was acceptable to them. The committee, not being bonded officers of the county, had a delicacy in handling any fund belonging to the county obtained on sale of said orders, and therefore requested the county clerk, J. L. Ozburn, to forward said orders to New York, which was done, and a draft forwarded through the First National Bank of Carbondale. Upon the arrival of said draft in the sum of eight thousand four hundred and sixty dollars ($8,460), the county clerk gave his check to the said bank, and took up the orders held by that bank as collateral for funds advanced to the contractors and superintendent of construction in the following sums: Three orders of one hundred dollars each, payable to Hayden & Prickett; one order of four hundred dollars, payable to Hayden & Prickett; six orders of five hundred dollars each, made payable to Hayden & Prickett; one order of one hundred dollars, payable to J. S. Hartman; one order of two hundred dollars, made payable to J. S. Hartman. * * * Said orders were canceled by the clerk, and are herewith presented. We recommend that the same be canceled on the books, and that they be destroyed by fire, in the presence of this board." At the July term, 1895, the committee reported: "The building is virtually completed. * * * $2,700 in orders have been issued in payment of the work of building. It will take $6,000 more orders to pay all claims and complete the building in all its details. We therefore recommend that the county clerk be instructed to issue the above amount in a routine series on the order of the building committee;" and later a further issue to the amount of $2,500 was authorized.

A transcript of these and other relevant proceedings of the board of supervisors was admitted in evidence, but the warrants and coupons were excluded on the ground that their execution was not authorized by law. The plaintiff in error asserts authority therefor in section 26, c. 34, p. 655, 1 Starr & C. Ann. St., which provides: "It shall be the duty of the county board of each county, first, to erect or otherwise provide, when necessary and the finances of the county will justify it, and keep in repair a suitable court house, jail and other necessary county buildings, and to provide proper rooms and offices for the accommodation of the several courts of record of the county, and for the county board, county clerk, county treasurer, recorder, sheriff and the clerks of the said courts, and to provide suitable furniture therefor. But for counties not under township organization, no appropriations shall be made for the erection of public buildings without first submitting the proposition to a vote of the people of the county, and said vote shall be submitted in the same manner and under the same restrictions as provided for in like cases in section 27 of this act." The contention of the defendant in error is that the act quoted is limited by the following provisions of the act of 1879 (chapter 146a, Rev. St. Ill. [Hurd's Revision]): "(1) That warrants payable on demand, shall hereafter be drawn and issued upon the treasurer of this state or of any county, township, city, school district or other municipal corporation, or against any fund in his hands, only when at the time of drawing and issuing of such warrants, there shall be sufficient money in the appropriate fund in the treasury to pay said warrants. (2) That whenever there is no money in the treasury of any county, township, city, school district or other municipal corporation to meet and defray the ordinary and necessary expenses thereof, it shall be lawful for the proper authorities of any county, township, city, school district or other municipal corporation, to provide that warrants may be drawn and issued against and in anticipation of the collection of any taxes already levied by said authorities for the payment of the ordinary and necessary expenses of any such municipal corporation, to the extent of seventy-five per centum of the total amount of any said tax levy: provided, that warrants drawn and issued under the provisions of this section shall show upon the face that they are payable solely from said taxes when collected, and not otherwise,

and shall be received by any collector of taxes in payment of the taxes against which they are issued, and which taxes, against which said warrants are drawn, shall be set apart and held for their payment."

George A. Sanders, for plaintiff in error.

Samuel P. Wheeler, for defendant in error.

Before WOODS, Circuit Judge, and BUNN and SEAMAN, District Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The warrants in question are not payable on demand, were not issued in order to raise money "to meet and defray the ordinary and necessary expenses" of the county, and therefore do not come within the scope of either section of the act of 1879. It was so decided by the circuit court of Jackson county on an application for an injunction against the issue of these particular warrants. The transcript of that adjudication was offered in evidence, but, if otherwise competent as evidence upon any issue in the case, it was properly excluded, because not authenticated. It is not denied, however, that the injunction was applied for, and that in refusing it the circuit judge expressed the following opinion:

"The right to provide for the payment of contractors erecting a county jail by interest-bearing county orders payable at specified times in the future is recognized by our supreme court in Jackson Co. v. Rendleman, 100 Ill. 379. It is contended, however, that the act of May 31, 1879, providing for the issuing of warrants on county treasurer, etc., has rendered nugatory that decision. In my opinion, the act mentioned has no reference to an interest-bearing county order, payable at a specified time in the future, and issued in pursuance of a contract like the one in question. The act is limited to demand orders and those issued to meet and defray ordinary expenses."

That seems to us to be the right view of the question. The distinctions pointed out in the brief for the defendant in error between this and the Rendleman Case do not seem to be substantial. The one distinction which is claimed to be vital is that in that case "the order was issued to the contractor in payment for work for which the county had authority to contract, [while] in the case at bar the order was issued to a money lender for money which the county * * * had no authority to borrow." The building of a county jail was a work for which the county had authority to contract, and to issue its warrants in payment, and we cannot think that the warrants issued for such a purpose are to be deemed valid if issued directly to a contractor in payment for work or material, but invalid if issued for money which was paid at once to the contractor or his assignee. At most, only the discount necessary to obtain money on the warrants was involved, and in respect to that the supervisors were under no restrictions, except of good faith. They may have been bound in good conscience to make good to contractors the discounts suffered on the warrants first issued, and to keep the work going it may have been necessary or prudent to make the warrants at par as good as cash to the contractors, and to accomplish that it was doubtless found more economical to sell the warrants in round sums than to deal separately with each con-

98 F.—60

tractor. Indeed, there was no other practicable way of distributing the cost of the work for payment in equal or nearly equal annual sums, multiples of $500, over a number of years, as was contemplated from the beginning. The original warrants issued to the different contractors were in various sums, more often greater or less than equal to $500 or a multiple thereof, and in no proper sense can it be said that the warrants finally issued were executed for the purpose of funding a prior indebtedness. They were a part of the scheme from the beginning, and if, during the progress of the work, orders or warrants were given to contractors to be held until substituted by or paid with the proceeds of orders issued according to the original plan, the latter are not, on that account, to be condemned as invalid. The doctrine that a municipal body like a city, town, or county cannot issue a funding bond without special authority is conceded, but we believe it has never been applied, and think it ought not to be applied, to such a case. The court erred in refusing to admit the warrants and coupons in evidence, and for that reason the judgment is reversed, with direction to grant a new trial.